## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | RYBURN E. PITTS | : | Chapter 13 |
| | | : | |
| | Debtor(s) | : | Bky. No. 05-14399ELF |
| | | : | |

# M E M O R A N D U M   O P I N I O N

BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE

## I. INTRODUCTION

In this chapter 13 bankruptcy case, the holder of the mortgage on the Debtor's residential real estate filed a proof of claim asserting the existence of a prepetition delinquency of $18,102.58 on the mortgage.  The Debtor objects to certain components of the lender's claim for prepetition arrears.  Specifically, the Debtor challenges the lender's entitlement to the amounts claimed for certain prepetition legal expenses incurred and for alleged prepetition tax disbursements.

For the reasons explained below, I will sustain the Debtor's objection.  The creditor's claim for prepetition mortgage arrears will be allowed in the amount of $9,383.58.

## II. PROCEDURAL HISTORY

The Debtor is the owner of the real property located at 243 S. 57th Street, Philadelphia, PA ("the Subject Property").  The Debtor commenced this chapter 13 bankruptcy case on April 1, 2005.  The Debtor's bankruptcy schedules state that the Subject Property is encumbered by a mortgage held by The Money Store.  The Money Store did not file a proof of claim in this case, however.  Rather, Wachovia Bank, NA ("Wachovia") filed a proof of claim asserting that it

holds the mortgage against the Subject Property. The parties have stipulated, for purposes of the

contested matter arising from the Debtor's objection, that Wachovia is the holder of a mortgage

against the Subject Property.  The parties also have stipulated that "Wachovia Bank, NA, Bank of

New York and Homeq Servicing are one and the same."  Joint Stipulation of Facts ¶1.[1]

On May 3, 2005, the Debtor filed a chapter 13 plan in the present bankruptcy case.  The

plan provides that the payments made by the Debtor to the chapter 13 trustee are to be used to

cure the prepetition delinquency on the mortgage held by Wachovia against the Subject Property.

Joint Stipulation of Facts ¶2.

On August 17, 2005, Wachovia filed the secured proof of claim at issue.  The proof of

claim states that the total amount of the claim is $34,566.13.  The proof of claim also states that

the prepetition arrears on the claim ("the Arrears") are $18,102.58, itemized as follows in Exhibit

"A" to the proof of claim:

**TABLE #1  – ITEMIZATION OF ARREARS IN WACHOVIA PROOF OF CLAIM**

| Basis for Arrearage Claim | Amount |
|---|---|
| regular monthly instalments through 4/05 | $2,515.68 |
| late charge(s) | 133.56 |
| pre-petition attorney fees and costs | 6,512.16 |
| prior bankruptcy fees and costs | 1,745.00 |
| pre-petition escrow advances | 3,776.02 |
| other amounts for inspection fees, appraisal fees and other charges | 3,420.16 |
| **TOTAL** | **$18,102.58** |

---

[1]  In light of the parties' Stipulation, this Memorandum Opinion will refer to the secured
creditor as Wachovia even though relevant records reflect that the holder of the mortgage was, at
other times, the Bank of New York.

On August 31, 2005, the Debtor filed an objection to the Wachovia proof of claim ("the

Debtor's Objection"). The Debtor's Objection was simultaneously broad and general.  It stated:

> The prepetition arrears attached to aforesaid Proof of Claim are inaccurate and do
> not give credit to all pre-petition payments made by the Debtor.  In addition, the
> legal fees and costs on arrears are unreasonable and not actually incurred.

Debtor's Objection ¶4.

The hearing on the Debtor's Objection originally was scheduled for October 11, 2005.

The hearing was continued five times,[2] but finally was held on June 13, 2006.  After some

documentary evidence was submitted by the parties, in the middle of the hearing, the parties

altered course and agreed to complete the record by filing a Stipulation of Facts.  The Stipulation

of Facts was filed on August 10, 2006.  The next day, Wachovia filed a Memorandum in

Opposition to the Objection to the Proof of Claim.  On August 29, 2006, the Debtor filed a

Memorandum in Support of the Objection to the Proof of Claim.


### III.  STATEMENT OF FACTS

The Joint Stipulation of Facts filed by the parties does not contain many "historical

facts"[3] relevant to this contested matter, but it does bring into focus the general subject matter of

---

[2]  In the midst of the series of continuances, the parties reported a settlement of the
dispute to be memorialized by a Settlement Stipulation.  The settlement was never effected,
which led to the Debtor to re-list the objection for a hearing.

[3]  For an interesting discussion of the different types of "facts" (such as "primary facts,"
"subsidiary facts,""ultimate facts," "mixed questions of law and fact"), see Markman v.
Westview Instruments, Inc., 52 F.3d 967, 1009 (Fed. Cir. 1995).  See also Pullman-Standard v.
Swint, 456 U.S. 273, 287-90, 102 S.Ct. 1781, 1789-91 (1982); Baumgartner v. United States,
322 U.S. 665, 671, 64 S.Ct. 1240, 1243 (1944); William W. Schwarzer, Alan Hirsch, David J.

the parties' dispute –  the allowability of various legal expenses incurred and tax disbursements

made by Wachovia prior to the commencement of this case.  Table #2 below sets forth the

amounts of the components of the proof of claim in dispute.


### TABLE #2  – AMOUNT IN DISPUTE PER JOINT STIPULATION

| Component of Claim | Claim Amount | Amount Disputed by the Debtor |
|---|---|---|
| regular monthly instalments through 4/05 | $2,515.68 | 0 |
| late charge(s) | 133.56 | 0 |
| pre-petition attorney fees and costs | 6,512.16 | 4,652.34[4] |
| prior bankruptcy fees and costs | 1,745.00 | 780.00[5] |
| pre-petition escrow advances | 3,776.02 | 0 |
| other amounts for inspection fees, appraisal fees and other charges | 3,420.16 | 3,420.16[6] |
| | **$18,102.58** | **$8,852.50** |


In order to evaluate the issues raised by the Debtor's objection to Wachovia's claim, it is

necessary to consider the legal consequences, if any, of the Debtor's prior chapter 13 bankruptcy

---

Barrans, The Analysis and Decision of Summary Judgment Motions 13-21 (Federal Judicial
Center 1991).

[4] The parties stipulated that of the $6,512.12 in "prepetition attorneys fees and costs,"
$1,859.82 are undisputed and are allowable.  See Joint Stipulation of Facts ¶3.

[5]  The parties stipulated that of the $1,745.00 in "prior bankruptcy fees and costs,"
$965.00 are allowable.  See Joint Stipulation of Facts ¶4.

[6]  The Debtor disputes the entire $3,420.16 component for "other amounts for inspection
fees, appraisal fees and other charges."  Wachovia concedes that $1,133.64 should be disallowed
"as not sufficiently documented."  Joint Stipulation of Facts ¶6.  Thus, only $2,286.52 of that
component of the Arrears remains at issue.

case, Bky. No. 00-14716KJC (Bankr. E.D. Pa.) ("the Prior Bankruptcy").  To do this, I must

compare the dates of the key events in the Prior Bankruptcy to the dates of the activities that gave

rise to the legal expenses claimed by Wachovia as allowable in this bankruptcy case.   Table # 3

below sets forth a time-line of the events in the prior bankruptcy case which are relevant for

purposes of this contested matter.[7]

### TABLE #3  – PRIOR BANKRUPTCY TIME-LINE

| Date | Event/Action | Comment |
|------|--------------|---------|
| 4/10/00 | bankruptcy petition filed | |
| 8/21/00 | secured proof of claim filed by Wachovia | Original claim asserts arrearage of $6,456.26. Claim was amended on 9/5/00 and 12/28/00.  The second amended claim asserted claim for $3,233.76 in arrears. |
| 1/7/01 | objection to Wachovia proof of claim filed by the Debtor | |
| 2/9/01 | final amended proof of claim filed by Wachovia | $2,833.76 in arrears claimed |
| 2/27/01 | the Debtor's objection Wachovia proof of claim is reported settled | |
| 2/27/01 | amended chapter 13 plan filed by the Debtor | |
| 3/28/01 | confirmation order entered by the court | |
| 11/20/03 | Chapter 13 Trustee's Final Report filed by the Trustee[8] | The report shows distributions to the Wachovia of $2,833.76. |
| 1/6/05 | chapter 13 discharge order entered  by the court | |

---

[7]  The dockets in the Prior Bankruptcy were admitted into evidence.  Exhibit D-2.  In addition, I may take judicial notice of the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.  See Fed. R. Evid. 201;  In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa. Aug. 26, 1998).  See also In re Indian Palm Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

[8]  The Chapter 13 Trustee's Final Report was admitted into evidence as Exhibit R-2.

During the abbreviated evidentiary hearing, several documents were admitted into
evidence.  The most significant was Exhibit R-2, which includes copies of attorney invoices.
These invoices serve as the basis for many of the components of Wachovia's proof of claim that
are in dispute.  Therefore, I summarize them in Table # 4 below.

### TABLE #4  – SUMMARY OF WACHOVIA LEGAL EXPENSE INVOICES

| Invoice Date | Period Covered by Invoice | Nature of Services | Amount of Fees and Costs |
|---|---|---|---|
| 1/18/00 | 12/16/99 to 1/14/00 | foreclosure services | 596.50 |
| 2/15/00 | 2/15/00 | foreclosure services | 650.00 |
| 5/12/00 | 1/24/00 and 5/3/00 | foreclosure services | 2,517.50 |
| 7/10/00 | 6/10/00 to 8/1/00 | foreclosure services | 550.00 |
| 7/28/00 | 7/28/00 to 12/28/00[9] | bankruptcy services (relief from stay and preparation of proof of claim) | 540.00 |
| 1/18/01 | 1/18/01 | bankruptcy services (defense against the Debtor's objection to proof of claim) | 350.00 |
| 2/12/01 | 2/12/01 | bankruptcy services (proof of claim) | 75.00 |
| 8/6/04 | not explicit | bankruptcy services | 1,394.50 |
| 4/11/05 | not explicit | bankruptcy services | 568.82 |
| | | **TOTAL** | **$7,242.32** |

---

[9]  Wachovia did not explain how an invoice dated 7/28/00 could include charges incurred
on 12/28/00.

## IV. **DISCUSSION**

### A. **Applicable Legal Principles**

The starting point in analyzing a claims objection is 11 U.S.C. §502.  Section 502(b)(1)

provides:

> Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section, if such
> objection to a claim is made, the court, after notice and a hearing, shall determine
> the amount of such claim in lawful currency of the United States as of the date of
> the filing of the petition, and shall allow such claim in such amount, except to the
> extent that--
>
> > (1) such claim is unenforceable against the debtor and property of the
> > debtor, under any agreement or applicable law for a reason other than
> > because such claim is contingent or unmatured . . . .

In this case, the Debtor is not concerned especially with the amount of Wachovia's entire

claim.  The Debtor's real goal is to minimize the allowed amount of the Arrears so as to reduce

the amount he must pay to effect a cure of the prepetition delinquency pursuant to his chapter 13

plan.  Once this amount has been determined, the Debtor will amend his chapter 13 plan, if

necessary, to insure that his chapter 13 plan is funded sufficiently to pay the Arrears in full.

Conceptually, the Arrears are themselves treated as a "bankruptcy claim."  See Rake v. Wade,

506 U.S. 464, 471, 113 S.Ct. 2187, 2191 1993).

11 U.S.C. §1322(e) of the Bankruptcy Code provides guidance in the claims allowance

determination for an arrearage claim in a chapter 13 case.  Section 1322(e) provides that,

notwithstanding §506(b), §1322(b)(2) and §1325(a), in a plan which provides for a cure of a

default, "the amount necessary to cure the default shall be determined in accordance with the

underlying agreement and applicable nonbankruptcy law."[10]

The claims objection process requires a somewhat elaborate burden of proof analysis.

Initially, a properly filed proof of claim is deemed allowed unless a party in interest objects. 11

U.S.C. § 501. If an objection is filed to a proof of claim, the burden of proof may shift. See

United States v. Baskin and Sears, P.C., 207 B.R. 84, 86 (E.D. Pa. 1997). The Court of Appeals

has concisely summarized the shifting burdens as follows:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant
> satisfies the claimant's initial obligation to go forward. The burden of going
> forward then shifts to the objector to produce evidence sufficient to negate the
> prima facie validity of the filed claim. It is often said that the objector must
> produce evidence equal in force to the prima facie case. In practice, the objector
> must produce evidence which, if believed, would refute at least one of the
> allegations that is essential to the claim's legal sufficiency. If the objector
> produces sufficient evidence to negate one or more of the sworn facts in the proof
> of claim, the burden reverts to the claimant to prove the validity of the claim by a
> preponderance of the evidence.

In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted). See

also In re Gimelson, 2004 WL 2713059, at *13 (E.D. Pa. 2004); In re Galloway, 220 B.R. 236,

244 (Bankr. E.D. Pa. 1998).


**B.       Analysis of the Debtor's Objection**

The Debtor generally asserts in his filed objection that all of the legal expenses claimed

by Wachovia were not actually incurred. See Debtors Objection to Wachovia Claim ¶4. I will

begin by considering that contention. Then, I will consider the Debtor's specific objections to

---

[10] Section 1322(e) applies only to loan transactions entered into after October 22, 1994.
See Pub. L. 103-394, §§ 702(b)(2)(D) (Oct. 22, 1994). The transaction in this case took place on
July 25, 1996.

three components of the Arrears: (1) prepetition attorney fees and costs; (2) prior bankruptcy fees

and costs; and (3) "other amounts for inspection fees, appraisal fees and other charges."[11]

### 1.    legal expenses not actually incurred

A comparison of the itemization of the Arrears in Wachovia's proof of claim and the

other trial exhibits reveals a substantial shortfall in the evidence offered in support of

Wachovia's claim.  In its proof of claim, Wachovia asserts that the Arrears should be allowed in

the amount of $18,102.58.  Of that figure, Wachovia claims a total of $8,257.16 for legal

expenses, consisting of pre-petition attorney fees and costs ($6,512.16) and prior bankruptcy fees

and costs ($1,745.00).  See Table #1, supra.  However, based on my calculation, the nine (9)

invoices submitted by Wachovia in support of its proof of claim total only $7,242.32.  Thus, the

record suggests that Wachovia incurred less in legal expenses than it requested in its proof of

claim and Wachovia has not met its burden of proof on the issue.

Accordingly, with respect to Wachovia's proof of claim for  "prepetition attorney's fees

and costs" and "prior bankruptcy fees and costs," I will reduce the combined total claim for those

---

[11]      I note that Wachovia's nomenclature is somewhat confusing.  I am not sure why
Wachovia distinguishes between "prepetition attorney's fees" and "prior bankruptcy fees and
costs."  Both categories are simply different types of legal expenses allegedly incurred by
Wachovia before the present bankruptcy case was filed.  If one were to sub-categorize the legal
expenses incurred by Wachovia prior to the present bankruptcy case, I find it more accurate to
distinguish among four (4) sub-categories, not the two (2) sub-categories employed in the proof
of claim.  The four (4) sub-categories would be: (1) foreclosure expenses incurred before the
Prior Bankruptcy; (2) foreclosure expenses incurred during the Prior Bankruptcy; (3) legal
expenses incurred in asserting its rights and monitoring the Prior Bankruptcy; and (4) foreclosure
expenses incurred after the entry of the chapter 13 discharge in the Prior Bankruptcy but before
the commencement of the present bankruptcy case.  Based on my review of the parties Joint
Stipulation of Facts and the Debtor's Memorandum of law, I glean that the Debtor challenges the
allowability of only the first two (2) sub-categories of claimed legal expenses.  See n.12, infra.

-9-

two components from $8,257.16 to $7,242.32 before addressing the three specific objections

asserted by the Debtor.  This is a reduction of $1,014.84.[12]

### 2. pre-petition attorney fees and costs

The expenses that make up this first component of Debtor's Objection to the Arrears are

the legal expenses Wachovia incurred before the Debtor's Prior Bankruptcy.[13]  There are three

invoices from Exhibit R-2 that pertain to those legal expenses, totaling $1,516.50.[14]  The first two

---

[12]    Due to this inconsistency between the proof of claim and the invoices, I found it
impossible to construct a model for deciding this case based upon the parties' calculations in the
Joint Stipulation of Facts. Those calculations purported to identify the disputed components of
the proof of claim by reference to the invoices.  I could not reconcile the calculations among the
three sources (proof of claim, invoices, Joint Stipulation of Facts) and the parties' submissions
did not provide me with an adequate roadmap.  Therefore, in order to decide this case, I have
focused on the invoices submitted by Wachovia in support of its proof of claim and compared
them to the actual proof of claim.

Nevertheless, the Joint Stipulation of Facts did serve a valuable purpose.  Along
with the Debtor's Memorandum of Law, it identified the types of legal charges challenged by the
Debtor: the legal expenses incurred before the filing of the Prior Bankruptcy and the foreclosure
expenses incurred during the Prior Bankruptcy. This provided a framework for my examination
of the Wachovia invoices.

[13]  Exhibit D-1, admitted into evidence, consists of the docket entries in the state court
foreclosure lawsuit Wachovia filed against the Debtor, docketed at No. 1752, January Term 2000
(C.P. Phila.).  The dockets reflect that a mortgage foreclosure complaint was filed against the
Debtor on January 14, 2000, almost three (3) months before the commencement of the Debtor's
prior chapter 13 bankruptcy case.

[14]  As explained above, I am relying solely on the invoices from Exhibit R-2 to quantify
each component of the Debtor's Objection. Accordingly, the first component of the Debtor's
Objection consists of the following:

|                        |         |           |
| ---------------------- | ------- | --------- |
| Invoice Dated 1/18/00  |         | $596.50   |
| Invoice Dated 2/15/00  |         | 650.00    |
| Invoice Dated 5/12/00  |         | 270.00    |
|                        | Total   | $1,516.50 |

See Exhibit R-2.

invoices and part of the third invoice are for legal expenses incurred in connection with

foreclosure proceedings that took place before the Prior Bankruptcy filing on April 10, 2000.[15]

       The Debtor contends that these legal expenses should be disallowed because they are

"redundant" and "were paid" in the prior case.  See Debtor's Memorandum of Law at 2.  In

response, Wachovia emphasizes that the Debtor does not dispute the reasonableness of the

charges or that the fact that they were actually incurred.  Wachovia further argues that the charges

are "allowed by the mortgage" and were not "discharged" by the entry of the discharge order

following the completion of the Debtor's chapter 13 plan in the Prior Bankruptcy by virtue of 11

U.S.C. §1328(a)(1).  See Wachovia Memorandum of Law at 1-2.

       I agree with the Debtor.

       It is well-settled that public policy strongly favors the settlement of disputes and the

enforcement of settlement agreements.  See, e.g., Wilcher v. City of Wilmington, 139 F.3d 366

(3d Cir. 1998); Farris v. J.C. Penney, Inc., 2 F. Supp. 2d 695 (E.D. Pa. 1998);  In re Cudeyro, 213

B.R. 910, 921 (Bankr. E.D. Pa. 1997).[16]

       I find that during the Prior Bankruptcy, the parties reached a settlement as to the amount

of the prepetition arrears.  I infer from the docket of the Prior Bankruptcy that the amended proof

---

See Table #4, supra.

    [15]  The third invoice referenced is the one dated May 12, 2000.  That invoice includes a
$270.00 charge, incurred on January 24, 2000 (before the Debtor filed the Prior Bankruptcy) and
charges totaling $2,247.00, all incurred on May 3, 2000 (after the Debtor filed the Prior
Bankruptcy case).

    [16]  Pennsylvania law is entirely consistent on this subject.  See e.g., Felix v. Giuseppe
Kitchens & Baths, Inc., 2004 Pa Super 120, 848 A.2d 943, 949 (2004).  Thus, to the extent that
11 U.S.C. §1322(e) mandates that the amount of the arrearage be determined under applicable
nonbankruptcy law, the outcome is the same.

of claim filed by the Wachovia was filed in settlement of the Debtor's claims objection.[17]  The

amount of the prepetition arrearages agreed upon by the parties necessarily would have included

the $1,516.50 in legal expenses Wachovia claimed in this case.

Having agreed to a fixed sum as constituting the mortgage delinquency as of April 10,

2000 in settlement of claims litigation in the Prior Bankruptcy, Wachovia may not assert now

that additional sums were due, presumably based upon its own, unilateral mistake at the time it

reached settlement with the Debtor and filed the amended claim.   See Transportation Insurance

Co. v. Spring-Del Associates, 159 F.Supp. 2d 836, 843  (E.D. Pa. 2001) ("[h]owever improvident

an agreement may be or subsequently prove for either party, their agreement, absent fraud,

accident or mutual mistake, is the law of their case").

To the extent that there may be any doubt regarding the existence of a settlement, there is

a second, independent ground for disallowance of the legal expenses incurred before the filing of

the Debtor's Prior Bankruptcy.  The Debtor's chapter 13 plan in the prior case provided for a

cure of the prepetition mortgage arrears.  Wachovia is bound by the terms of the confirmed

chapter 13 plan.  See 11 U.S.C. §1327.

Wachovia filed a claim for the prepetition mortgage arrears and the Trustee distribution

paid that claim in full.  The amount needed to cure the prepetition default under the confirmed

plan necessarily was measured by the amount of the allowed claim for prepetition arrears, which

included legal expenses.  In light of the Debtor's completion of his performance under the

---

[17]  I recognize that the claims objection was reported settled after the amended proof of
claim of claim was filed.  However, I attribute that ostensible anomaly to the likelihood that
neither party had any urgent reason to report the settlement to the court prior to the scheduled
hearing date on the claims objection.

-12-

confirmed chapter 13 plan in the Prior Bankruptcy and the closure of that case, Wachovia is

bound by the claim it filed, as treated under the terms of the confirmed plan.  See In re

McDonald, 336 B.R. 380 (Bankr. N.D. Ill. 2006). See also In re Bryant, 323 B.R. 635 (Bankr.

E.D. Pa. 2005) (per Sigmund, Ch. J.) (creditor who filed claim denoting both full amount of

claim and a lower arrearage amount was bound by terms of confirmed chapter 13 plan that

treated the lower sum as the amount necessary for full payment of the entire claim).

Further, it is far too late in the day for Wachovia to modify the proof of claim it filed.

Fed. R. Bankr. P. 3008 provides that a party in interest may move for reconsideration of an order

allowing or disallowing a claim against the estate. It is unlikely that Rule 3008 applies as there

was no court order allowing or disallowing Wachovia's amended claim.  Rather, the amended

claim was allowed by operation of law because no objection to it was filed.  See 11 U.S.C.

§502(a).  Allowance of the amended claim might  also be subject to reconsideration pursuant to

11 U.S.C. §502(j), which makes no reference to allowance or disallowance by order of the court

and permits reconsideration "according to the equities of the case."  However, given the Debtor's

reliance on the allowed claim in formulating his chapter 13 plan and performance of his

obligations under the plan, I would consider it inequitable to reconsider the allowance of the

amended claim as filed in the Prior Bankruptcy.

Consequently, I will disallow the $1,516.50 claimed for pre-petition attorney fees and

costs.

### 3.    prior bankruptcy fees and costs

The Debtor next objects to allowance of the legal expenses Wachovia incurred during the

pendency of the Prior Bankruptcy.  Those legal expenses may be divided into two categories: (1)

legal services provided in representing Wachovia's interests in the Prior Bankruptcy; and (2)

legal services provided to Wachovia in the state court foreclosure action.  See nn.11-12, supra.

The Debtor does not object to the allowance of the legal expenses incurred by Wachovia for

services rendered in representing Wachovia's interests in the Prior Bankruptcy itself.  His

objection is limited to the legal expenses incurred in the state court foreclosure action.  The

amount at issue is $2,767.50.[18]

The legal services at issue were provided between May 3, 2000 and August 1, 2000.[19]

The state court docket reflects that Wachovia entered a default judgment against the Debtor and

filed a writ of execution on May 9, 2000, during the pendency of the Prior Bankruptcy.  On July

11, 2000, after a "suggestion of bankruptcy" was filed, the state court vacated the default

judgment.  See Exhibit D-1.[20]  Significantly, the bankruptcy docket in the Prior Bankruptcy

---

[18]                        Invoice Dated 5/12/00              $2,217.50
                          Invoice Dated 7/10/00                  550.00
                                                      Total   $2,767.50

See Exhibit R-2.

[19]  The invoice dated 7/10/00 includes a line item "dated" 8/1/00.  Nothing in the record
explains why an invoice dated 7/10/00, see n. 17, supra, would include a bill dated in the future.

[20]  Notwithstanding the filing of the suggestion of bankruptcy on July 11, 2000, the
invoice dated 7/10/00 includes a charge purportedly incurred on 8/1/00 as a "foreclosure fee."
Again, one is left to ponder how a bill dated 7/10/00 can include a charge incurred three weeks
later.

reflects that no order was entered granting Wachovia relief from the automatic stay between the

commencement of the bankruptcy case on April 10, 2000 and August 8, 2000.

 The issue before me is not difficult to resolve.  It is obvious that all of the challenged

legal services were rendered in prosecuting the foreclosure litigation in violation of the automatic

stay provision of the Bankruptcy Code, 11 U.S.C. §362(a).  That provision stays, <u>inter alia</u>, the

continuation of any judicial proceeding against a debtor that was commenced before a debtor's

bankruptcy case was filed or to recover a claim against a debtor that arose before the filing of the

bankruptcy case.  Indeed, as a general principle, actions taken in violation of the automatic stay

are void <u>ab initio</u>.  <u>E.g.</u>, <u>Maritime Electric Co, Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1206

(3d Cir. 1991).

 Paragraph 21 of the subject mortgage obligates the Debtor to reimburse Wachovia for

legal expenses incurred in a mortgage foreclosure action.  Paragraph 21 provides that Wachovia

> shall be entitled to collect all expenses incurred in pursuing the remedies provided
> in this paragraph 21, including, but not limited to, attorneys' fees and costs of title
> evidence to the extent permitted by applicable law.

 Implicit in the fee-shifting provision of paragraph 21 of the subject mortgage is the

limitation that the reimbursable legal fees be reasonable.[21]   Absent unusual circumstances, legal

---

[21] It has long been the law in Pennsylvania that a contractual attorneys' fee-
shifting provision is enforceable only to compensate a plaintiff for the reasonable
and necessary expense of collection and that the amount allowed is within the
discretion of the court. <u>E.g.</u>, <u>Lindley v. Ross</u>, 137 Pa. 629, 20 A. 944 (1890). Such
contractual provisions are subject to the court's equitable control and should not
be enforced to the extent that they would result in an award in excess of a
reasonable rate. <u>See Jarvis v. Stoffal</u>, 54 Pa. Super. 362 (1913); <u>accord</u>, <u>In re West
Chestnut Realty of Haverford, Inc</u>., 186 B.R. 612 (Bankr. E.D. Pa.1995).

<u>In re Gordon-Brown</u>, 340 B.R. 751, 755 n.6 (Bankr. E.D. Pa. 2006).

actions taken and expenses incurred in violation of the Bankruptcy Code's statutory injunction found in 11 U.S.C. §362(a) are void. It follows that the expenses are presumptively unreasonable. Wachovia has come forward with no explanation or evidence to justify the continuation of the foreclosure action in the period April through August 2000 while the automatic stay was in effect. Therefore, I find that the $2,767.50 in legal expenses incurred while the automatic stay prohibited prosecution of the pending mortgage foreclosure action are unreasonable and are not reimbursable under the mortgage. Those expenses are not allowable under 11 U.S.C. §502(a)(1).

### 4.    The "Other Amounts" for Taxes

The last component of the Debtor's Objection is for "other amounts for inspection fees, appraisal fees and other charges." The amount claimed by Wachovia is $3,420.16. Of that sum, the Debtor disputes $2,286.52. See n.6, supra. The parties agree that the disputed $2,286.52 is for "taxes." See Exhibit R-3. The record reveals nothing more about this component of the claim for Arrears. The record contains neither escrow account statements nor canceled checks verifying the payment of taxes by Wachovia.

The Debtor argues that he requested documentation of this charge and received no information from Wachovia. He asserts that without some information as to "when, where, how and what for," the claim for taxes is a "mere assertion for an unsubstantiated claim." Debtor's Memorandum of Law at 3. In response, Wachovia argues that the mortgage permits it to pay taxes and seek reimbursement from the Debtor for those advances, citing paragraphs 2, 7, 18 and 21 of the mortgage.

The contractual mechanism for payment of these taxes is found in paragraph 2 of the mortgage.  Paragraph 2 obligates the Debtor to make monthly payments to Wachovia in addition to the monthly payment on principal and interest.  Paragraph 2 also provides that those additional payments (commonly referred to as "escrow" payments)  are to be used by Wachovia to pay taxes and insurance (which are referred to in paragraph 2 of the mortgage as "Escrow Items").  If the Debtor does not make the periodic escrow payments, paragraph 7 of the mortgage permits Wachovia to make disbursements for real estate taxes to protect its interest in the property.[22] Such disbursements must be repaid by the Debtor.

After reviewing the mortgage, I agree with Wachovia that the Debtor has an obligation to pay real estate taxes that fall due annually on the Subject Property as such taxes are "yearly taxes and assessments which may attain priority" over the mortgage.  See Exhibit D-5 (Mortgage ¶2). However, the fact that the mortgage provides that the Debtor must reimburse Wachovia if Wachovia advances money to pay the taxes establishes neither that money was actually disbursed nor the amount of such disbursements.  Therefore, the mere existence of the contractual reimbursement duty does not, by itself, resolve the issue as to the allowance of the amount set

---

[22] Paragraph 7 provides, in pertinent part:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property.  Lender's actions may include paying ***any sums secured by a lien which has priority over this Security Instrument***, appearing in court [and] paying reasonable attorneys' fees. . . .  Any amounts disbursed by the Lender under this paragraph 7 ***shall become additional debt of Borrower*** secured by this Security Agreement.  (emphasis added).

forth in the proof of claim.

In Wachovia's proof of claim, the itemization of the components of the Arrears contains a separate line item for "pre-petition escrow advances" and, for that item, asserts a claim of $3,776.02.  <u>See</u> Exhibit D-5.  I find the existence of a separate component in the proof of claim itemization for unreimbursed "pre-petition escrow advances" to be significant.  If Wachovia made real estate tax payments pursuant to paragraph 7 of the mortgage that were not reimbursed from the escrow component of the Debtor's monthly payments, I would have expected those advances to be claimed as part of the "pre-petition escrow advances" line item.  Since Wachovia has made a substantial claim for this kind of "escrow deficiency" in a separate, more specific line in the itemization of the Arrears, it is peculiar that a different, more general line item called "other amounts . . . and other charges" also includes a component for taxes. I find that this incongruity in the itemization of the Arrears in Wachovia's proof of claim renders the Debtor's request for further verification justified and meets the Debtor's initial burden of production in challenging the validity of the claim.[23]

---

[23]  The Debtor argues that Wachovia's failure to produce documentation relating to the disputed charge met his burden of production.  There is legal authority suggesting that standing alone, an objector's assertion that a claimant failed to respond to the objector's request for corroboration of a disputed charge in a proof of claim may be sufficient to meet the objector's burden of production.  <u>See</u> <u>In re McKnight</u>, 2005 WL 1313519, *4 (Bankr. E.D. Pa. May 31, 2005) (per Sigmund, Ch. J.) (if claimant fails to produce documents to substantiate claim, claim is not self-sustaining and will not be accorded <u>prima facie</u> validity in the face of an objection). In this case, the record does not establish whether the Debtor's request for documentation of the disputed charges was made informally or whether the Debtor invoked his discovery rights under the rules of court.  <u>See</u> Fed. R. Bankr. P. 7028-37 (incorporated by reference in Fed. R. Bankr. P. 9014).  If the Debtor made a formal discovery request, no motion to compel discovery was filed with the court.  In short, the Debtor provided little information regarding the particulars of his request for documentation of this disputed charge.  My finding that the Debtor met his burden of production with respect to his objection to the "other amounts" charge for taxes  is based primarily on the odd itemization of the Arrears in Wachovia's proof of claim rather than the

The Debtor having met his initial burden, the burden of proof to establish the validity of the claim by a preponderance of the evidence shifted to Wachovia.  Wachovia produced no evidence verifying or explaining the meaning of the $2,286.52 for "taxes."  Therefore, I find that Wachovia has not met its burden of proof.

Based upon the parties' respective burdens of proof, I will sustain the Debtor's Objection to this component of the proof of claim.  I will disallow the charge of $2,286.52 for "taxes" included in the component "other amounts for inspection fees, appraisal fees and other charges" in Wachovia's itemization of the Arrears.  Wachovia has stipulated that $1,133.64 in "other amounts for inspection fees, appraisal fees and other charges" should also be disallowed.  Therefore, the entire $3,420.16 claimed for this component of the proof of claim will be disallowed.

---

failure of Wachovia to respond to an information request from the Debtor.

## VI.  CONCLUSION

For the reasons set forth above, I will reduce Wachovia' proof of claim for Arrears of $18,102.58 by $8,719.00.[24]  The proof of claim for Arrears will be allowed in the amount of $9,383.58.

An order consistent with this Memorandum Opinion will be entered.

Date:  _____

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[24]

| | |
|---|---|
| Discrepancy between Proof of Claim and Invoices Submitted | $1,014.84 |
| Prepetition Attorney Fees and Costs | $1,516.50 |
| Prior Bankruptcy Fees and Costs | $2,767.50 |
| "Other Amounts" for Taxes | $3,420.16 |
| **TOTAL REDUCTION** | **$8,719.00** |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:     **RYBURN E. PITTS**    :    **Chapter 13**
                                   :
                **Debtor(s)**    :    **Bky. No. 05-14399ELF**
                                   :

# O R D E R

     **AND NOW,** upon consideration of the Debtor's Objection to the Proof of Claim of Wachovia Bank, N.A. (Claim No. 2), after a hearing and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1.     The Objection is **SUSTAINED**.

2.     Claim No. 2 is **ALLOWED IN PART AND DISALLOWED IN PART** as a secured claim for prepetition mortgage arrears.

3.     Claim No. 2 is **ALLOWED** as a secured claim for prepetition mortgage arrearages in the amount of **$9,383.58**.

Date: _____                _____

                                       **ERIC L. FRANK**
                                       **U.S. BANKRUPTCY JUDGE**